```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
   YLD LIMITED,                                             :
                                  Plaintiff,                :
                                                            :
              -v-                                           :     15-CV-0855 (JPO)
                                                            :
   THE NODE FIRM, LLC, NODE SOURCE, LLC,                    :     OPINION AND ORDER
   NODESOURCE INC., DANIEL SHAW, and                        :
   JOE MCCANN,                                              :
                                  Defendants.               :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Plaintiff YLD Limited ("YLD") filed this action on February 5, 2015. (Dkt. No. 1.) YLD alleges that Defendants The Node Firm, LLC ("TNF"), Node Source, LLC, Nodesource Inc., Daniel Shaw, and Joe McCann (collectively, "Defendants") infringed YLD's copyrights and trademarks to develop competing businesses. (Dkt. No. 29.) Defendants move to transfer the case to the United States District Court for the Northern District of California, or, in the alternative, for a partial dismissal of the complaint. (Dkt. No. 20.) For the reasons that follow, the motion to transfer is granted.

I.     Factual Allegations

YLD alleges the following facts. YLD is a private foreign corporation in the United Kingdom. (Dkt. No. 29 ("Compl.") ¶ 6.) In late 2011, it began offering consulting services for Node.js programming under the trade name "The Node Firm." (Compl. ¶ 27-29.) Node.js is a "cross-platform runtime environment for server[-]side and networking applications." (Dkt. No. 38 ¶ 5.) Operating as "The Node Firm," YLD and its founder, Nuno Job, advertised, spoke at conferences, offered trainings, and used training materials that Job created for and YLD acquired from a third party, Nodejitsu, Inc. (Compl. ¶¶ 21-26, 31-34.)

1

According to YLD, Defendants sought to develop a competing Node.js training and consulting firm, in part by stealing some of YLD's existing clients. (Compl. ¶ 40.) On February 28, 2013, the individual defendants founded TNF, without permission to use the name "The Node Firm" or the training materials. (Compl. ¶¶ 44-46.) They quickly began advertising consulting services in the name "The Node Firm." (Compl. ¶ 47.) The new firm conducted trainings at companies including PayPal, Netflix, Pearson Education, and Symantec, which used the training materials and derivative works from the training materials. (Compl. ¶¶ 50-51.) Defendants also allegedly licensed the training materials to third parties—including a license to PayPal for $1 million—without YLD's consent. (Compl. ¶ 53-54.) According to the Complaint, after YLD sent the individual defendants and TNF a cease-and-desist letter, they reincorporated as Node Source and Nodesource Inc., continuing their business using the training materials. (Compl. ¶¶ 60-64.) These new entities also use "The Node Firm" as a trade name. (Compl. ¶ 75.)

YLD asserts ten claims of copyright infringement, trademark infringement, unfair competition, unjust enrichment, and fraudulent conveyance against the various defendants. (Compl. ¶¶ 79-218.) It seeks injunctive relief preventing Defendants' use of the training materials and the name "The Node Firm," and damages, including disgorgement of profits. On May 4, 2015, Defendants filed this motion seeking transfer of this action to the Northern District of California, as well as partial dismissal of the Complaint for failure to state a claim. (Dkt. No. 20; Dkt. No. 23 at 1.)

## II.     Legal Standards

A district court may transfer a civil action to another district "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). When deciding motions to transfer, "courts inquire, first, whether the action could have been brought in the transferee

district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion." *Randle v. Alexander*, 960 F. Supp. 2d 457, 485 (S.D.N.Y. 2013) (Oetken, J.) (citations and internal quotation marks omitted). In general, to succeed on a transfer motion, the movant must present "clear and convincing evidence[] that transfer is appropriate." *Berger v. Cushman & Wakefield of Penn., Inc.*, No. 12-CV-9224, 2013 WL 4565256, at *4 (S.D.N.Y. Aug. 28, 2013) (Oetken, J.) (citations omitted).

An action "might have been brought" in a transferee court if, at the time of filing, that court would have had jurisdiction and venue would have been proper. *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 383, 399 (S.D.N.Y. 2010) (citations omitted). If the movant establishes that the case could have been filed in another district, the court considers whether convenience and justice favor transfer. 28 U.S.C. § 1404(a). To make this determination, courts balance several factors:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Steck v. Santander Consumer USA Holdings, Inc.*, No. 14-CV-6942, 2015 WL 3767445, at *2 (S.D.N.Y. June 17, 2015) (Oetken, J.) (citation omitted). No single factor is determinative in transfer analysis. Instead, "weighing the balance is essentially an equitable task left to the Court's discretion." *Berger*, 2013 WL 4565256, at *4 (citation omitted).

**III.   Discussion**

Defendants seek to transfer this action to the Northern District of California. They argue, and YLD does not dispute, that at the time of filing venue would have been proper in California and the California court would have had both subject matter and personal jurisdiction over all the

3

Defendants. Accordingly, the action could have been filed in the proposed transferee court. At issue is whether the discretionary Section 1404 factors weigh in favor of transfer.

The transfer factors at issue in this case are the convenience of witnesses, the availability of process to compel the attendance of witnesses, the locus of operative facts, the relative means of the parties, the Plaintiff's choice of forum, and the interests of justice.[1]

### 1. Convenience of Witnesses and Parties

"Convenience of both the party and non-party witnesses is probably the single most important factor in the analysis of whether transfer should be granted." *Steck*, 2015 WL 3767445, at *3 (citation and alteration omitted). "In evaluating this factor, the court . . . look[s] beyond the quantity of witnesses and assess[es] the quality of the testimony to be offered." *Larew v. Larew*, No. 11-CV-5771, 2012 WL 87616, at *4 (S.D.N.Y. Jan. 10, 2012) (citations omitted). "A party moving for transfer of venue for the convenience of witnesses is not required to submit an affidavit from each witness." *G. Angel Ltd. v. Camper & Nicholsons USA, Inc.*, No 06-CV-2495, 2008 WL 351660, at *4 (S.D.N.Y. Feb. 8, 2008). However, the movant must identify material witnesses and supply a general description of what their testimony will cover. *Steck*, 2015 WL 3767445, at *3 (citation omitted).

A strong factor in favor of transfer is the location of the majority of the non-party witnesses with the most important testimony: California. Defendants contend, specifically, that their material witnesses will include representatives from PayPal, Netflix, and Symantec—each of which has its headquarters and principal place of business in the Northern District of

---

[1] The location of relevant documents, which is entitled to relatively little weight in transfer analysis, favors neither party given the availability of electronic discovery. *See Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) ("The location of documents and records is not a compelling consideration when records are easily portable." (internal quotation marks omitted)).

California—to discuss their negotiations with Defendants, the trainings at those companies, and the materials used in those trainings. (Dkt. No. 21 at ¶¶ 22-28; Dkt. No. 23 at 11-12.) Defendants identify four non-party witnesses representing those corporations who are located in California. (Dkt. No. 23 at 12.) Similarly, though Pearson Education's North American headquarters is in New York, Defendants aver that their training was arranged through and conducted at Pearson's office in Denver, Colorado, with negotiations primarily in California and Colorado. (Dkt. No. 39 at 13; Dkt. No. 44 at ¶ 9-10.) To be sure, Nodejitsu, Inc., the alleged original owner of the copyright on the training materials, is headquartered in New York. (Dkt. No. 39 at 13-14.) But Plaintiff does not identify any particular witnesses from Nodejitsu in New York who they anticipate calling, and Defendants aver that Nodejitsu is now owned by a company based in California. (Dkt. No. 42 at 4.) Defendants also identify two other individuals whose testimony they anticipate seeking—Mikael Rogers and Isaac Schlueter—both of whom are located in the Northern District of California. (Dkt. No. 23 at 12; Dkt. No. 42 at 3.) This factor as a whole weighs strongly in favor of transfer.

In opposition to transfer, YLD complains that Defendants have a significant number of employees in New York, some of whom may ultimately offer evidence. Since the parties have conducted no discovery, however, YLD cannot identify any of these witnesses. Still, the existence of identified, relevant witnesses in California who will be called outweighs YLD's speculation that they will eventually want to call New York-based witnesses.

Review of the party witnesses does not disturb this conclusion. The two individual Defendants are expected to testify. One, McCann, previously resided in the Southern District of New York and now resides in Texas, while the other, Shaw, resides in the Northern District of California. (Dkt. No. 23 at 1, 13; Dkt. No. 44 at ¶ 5.) As McCann and Shaw work remotely and sometimes travel for work, however, it is not clear that appearing in either district will be

especially burdensome. (Dkt. No. 39 at 9-10.) Plaintiff identifies various associates of Defendants who they suggest may offer helpful testimony, on information or belief, but Defendants aver that those associates could have no useful information given their relationships to Defendants. (Dkt. No. 39 at 5, 12; Dkt. No. 44 at ¶¶ 6-8). The Court accords the convenience of party witnesses little weight on these facts. *See Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 434 (E.D.N.Y. 2012) ("[T]he convenience of non-party witnesses is accorded more weight than that of party witnesses." (quoting *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008)).

### 2. Availability of Process to Compel the Attendance of Witnesses

In most cases, any witness who is unwilling to appear can be represented through deposition testimony. *Steck*, 2015 WL 3767445, at *8 (citing *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 405 (S.D.N.Y. 1998)). Nonetheless, the availability of process to compel the attendance of witnesses is a factor in transfer analysis.

Here, while neither party has identified witnesses who are unwilling to testify, Defendants have indicated that all likely witnesses reside in California. Accordingly, if there are witnesses who are unwilling to testify, they are more likely to fall within the reach of a California court's subpoena power than this Court's power to compel testimony. *See* Fed. R. Civ. P. 45(c). The availability of process thus weighs slightly in favor of transfer. *See AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 530-31 (S.D.N.Y. 2004) (Chin, J.).

### 3. Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Berger,* 2013 WL 4565256, at *10 (internal quotation marks omitted). In a copyright case, the locus of operative facts "relate[s] to the design, development, and production of an

infringing product." *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012) (Nathan, J.) (collecting cases). In an action for trademark infringement, the locus of operative facts is generally "the initially chosen forum if acts of infringement, dilution, or unfair competition occurred in that forum," or "the location of consumer confusion." *Id.* at 19. *But see id.* at 21-22 (questioning this rule).

This case includes both copyright and trademark claims. Under either test, the locus of operative facts is the Northern District of California. The allegedly infringing training materials used by Defendants were developed in that district. (Dkt. No. 21 at ¶ 29.) And the locations of consumer confusion described in the Amended Complaint are primarily California and Colorado, with no *specific* occasions of consumer confusion in New York alleged. (Dkt. No. 23 at 16-17; Compl. ¶¶ 36-78.) This factor supports transfer.

    **4. Relative Means of the Parties**

A significant financial disparity between the parties may support or discourage transfer of venue. *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 290 (S.D.N.Y. 2004). There is no suggestion that it would be unduly burdensome for the corporate entities or the individual Defendants to litigate in either forum. This factor is neutral.

    **5. Forum's Familiarity with Governing Law**

The forum's familiarity with governing law "is generally given little weight in federal courts." *Mastr Asset Backed Sec. Trust 2007-WMC1, ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 423 (S.D.N.Y. 2012) (quoting *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006)). The Northern District of California is able to interpret federal copyright and trademark law, as well as the common law of unfair competition. And the Northern District of California is capable of applying New York law of unjust enrichment and fraudulent conveyance. *See, e.g., Fenerjian v. Nongshim Co.*, 72 F.

Supp. 3d 1058, 1088-90 (N.D. Cal. 2014). Accordingly, this factor weighs only slightly against transfer.

### 6. Plaintiff's Choice of Forum

While a plaintiff's choice of forum is generally entitled to considerable weight, "[t]he degree of deference given to [that] choice varies with the circumstances." *Steck*, 2015 WL 3767445, at *8 (citation omitted). When a plaintiff sues in a forum that is neither her home nor the location of the operative facts, her choice of forum is "accorded substantially less deference" than it would otherwise receive. *Id.* (citing *U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 537 (S.D.N.Y. 2014)).

YLD has chosen to litigate in New York, but it is a foreign corporation. Its sole owner, Job, is also a foreign citizen living abroad, though YLD alleges he once lived in New York and often travels to New York. At most, this factor weighs only slightly against transfer.

### 7. Trial Efficiency and the Interests of Justice

Defendants argue that it is efficient and just to transfer this action to California, where most of the operative facts occurred and all the potential witnesses are located. (Dkt. No. 23 at 19.) YLD argues that Defendants have submitted no proof that litigating in New York will be inconvenient, especially since many of the relevant documents are electronic. (Dkt. No. 39 at 24-25.)

Defendants' efficiency analysis prevails. For reasons already stated, the Court concludes that Defendants have met their burden as to the locus of the operative facts. Given that this case has not proceeded past a dispositive motion, there is no lost efficiency in transferring the case to a different judge. And at this stage, New York's connection to the case is slight, while California's is greater. The interest in efficient and just dispute resolution supports transfer.

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion to transfer is GRANTED.  This action is hereby transferred to the United States District Court for the Northern District of California. Because the action is transferred, the Court does not pass on the partial motion to dismiss.  *See, e.g.*, *Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 105 (S.D.N.Y. 2007) (declining to reach pending motions where a motion to transfer is granted).

The Clerk of Court is directed to close the motion at Docket Number 20.


SO ORDERED.


Dated: January 14, 2016
       New York, New York

_____
J. PAUL OETKEN
United States District Judge